IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ESTECH SYSTEMS IP, LLC, | CIVIL ACTION NO. 2:25-cv-00258 |
| Plaintiff, | ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT |
| v. | |
| PANASONIC CORPORATION OF NORTH AMERICA, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Estech Systems IP, LLC ("Estech") files this original complaint against Panasonic Corporation of North America ("Panasonic") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**PARTIES**

1.      Estech Systems IP, LLC is a Texas corporation, with its principal place of business in the Eastern District of Texas at 3701 East Plano Parkway, Suite 300, Plano, Texas 75074.

2.      Defendant Panasonic Corporation of North America is a corporation organized and existing under the laws of Delaware, with its principal place of business at Two Riverfront Plaza, Newark, NJ 07102.  Panasonic maintains offices in the Eastern District of Texas, specifically located at 5904 Stone Creek Dr., Suite 130, The Colony, TX 75056 and 3461 Plano Pkwy, The Colony, Texas 75056.

**JURISDICTION AND VENUE**

3.      This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391(b)-(c). Venue is proper for Panasonic, Inc. because it is a company incorporated in Delaware with offices located in the Eastern District of Texas, specifically at 5904 Stone Creek Dr., Suite 130, The Colony, TX 75056 and 3461 Plano Pkwy, The Colony, Texas 75056.

5.      Panasonic is subject to this Court's specific and general personal jurisdiction due at least to their substantial business in this forum, including (i) at least a portion of the infringements alleged herein; (ii) maintaining a regular and established place of business in the district; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

6.      Specifically, Panasonic intends to, and does, business in Texas, directly or through intermediaries and offer its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Eastern District of Texas.

7.      Panasonic maintains at least one regular and established place of business in this district, including at 5904 Stone Creek Dr., Suite 130, The Colony, TX 75056 and 3461 Plano Pkwy, The Colony, Texas 75056.

## THE TECHNOLOGY

8.      Estech is an affiliate of Estech Systems, Inc. ("ESI") which for more than 30 years has been a leading U.S.-based provider of end-to-end business phone solutions.  ESI's Network Operations Center is located in Plano, Texas.

9.      Since 1987, ESI has sold more than 400,000 solutions to its customers, working with more than 1,500 certified partners nationwide.  Its customers include small and large businesses across the country.

10.     Recognizing that business does not get done without communication, ESI provides powerful products that are easy and simple to use.  ESI's products are engineered to make intelligent technology that is intuitive and user-friendly, empowers employee productivity, and fuels customer satisfaction.

11.     ESI's technology is American engineered.  From its Plano, Texas headquarters, ESI provides a full solutions portfolio of modern business phone systems, including Cloud, Hybrid, Pure IP, and SIP dial tone products.  Given ESI's end-to-end product offerings, its customers are empowered to choose the product features they need and want.

12.     ESI's products include the most integrated cloud PBX in the market—the award-winning ESI Cloud PBX; Voice over IP (VoIP) products and systems; and on-premises products. A cloud-based PBX is a sophisticated telephone exchange system that uses a cloud infrastructure to provide communication services, such as telephony services.

13.     VoIP transmits and receives voice communications over data networks, such as the Internet or private networks, using the Internet Protocol (IP).

14.     VoIP systems offer several advantages over traditional phone systems including, but not limited to, lower cost and more efficient network management.

15.     VoIP systems also enable integration of additional communication services.

16.     ESI cloud-based VoIP products have handled billions of call minutes.

17.     ESI also provides U.S.-based, best-in-class technical support for its customers.

18.     The patents-in-suit, U.S. Patent Nos. 8,391,298 (the "'298 Patent"), 7,068,684 (the "'684 Patent"), and 7,123,699 (the "'699 Patent") (collectively, the "Estech Asserted Patents"), are generally directed to systems and methods for providing robust, feature-rich communications

systems including, but not limited to, VoIP telephony and additional communication services that can be integrated with a VoIP telephony system.

19.     The Estech Asserted Patents have been widely licensed in relevant industries, including more than 20 different license agreements consummated to date, including with Cisco Systems, Microsoft, Mitel, and Avaya.

20.     Products and services of or provided by Cisco, Microsoft, Avaya, Mitel, RingCentral, 3CX, NEC, Polycom, Sangoma, Yealink, Dialpad, Zultys, or their Affiliates, including any portions thereof, alone or in combination with one or more other products, services, processes, or other items, are not alleged to satisfy, in whole or in part, any element or a step of any claim in the Estech Asserted Patents.

## THE ACCUSED INSTRUMENTALITIES

21.     On information and belief, Panasonic has and continues to design, make, manufacture, sell, and offer to sell communication equipment and services and system-design services, including but not limited to, for example, VoIP telephony devices (e.g., Panasonic-branded VoIP Desk Phones with a PC port (e.g., KX-HDV Series (e.g., KX-HDV130, KX-HDV230, KX-HDV330, KX-HDV340, KX-HDV430), KX-UT Series (e.g., KX-UT123, KX-UT133, KX-UT136, KX-UT248, KX-UT670), KX-UTG Series (e.g., KX-UTG200, KX-UTG300), KX-NT Series (e.g., KX-NT680, KX-NT630, KX-NT560, KX-NT556, KX-NT553, KX-NT551, KX-NT546, KX-NT543, KX-NT400, KX-NT343, KX-NT346, KX-NT366), KX-HGT Series SIP phones (e.g., KX-HGT100)), Panasonic-branded VoIP Desk Phones without a PC port (e.g., KX-UT113), Panasonic-branded VoIP Cordless or DECT Phones (e.g., KX-TGP Series (e.g., KX-TGP500, KX-TGP550, KX-TGP600, KX-TGP700), KX-TPA Series (e.g., KX-TPA60, KX-TPA65, KX-TPA68, KX-TPA70, KX-TPA73), KX-UDS Series (e.g., KX-UDS124), KX-

UDT Series (e.g., KX-UDT111, KX-UDT121, KX-UDT131)), Panasonic IP softphones (e.g., KX-NCS8100 IP Softphone), and Panasonic-branded VoIP Conference Phones (e.g., KX-NT700, KX-HDV800)), Panasonic Voicemail systems (e.g., KX-TVM50, KX-TVM200), and Panasonic telephony network hardware (e.g., KX-NS Series (e.g.,  KX-NS300, KX-NS500, KX-NS700, KX-NS1000, KX-NSX1000, KX-NSX2000), KX-TDE Series (e.g., KX-TDE100, KX-TDE200, KX-TDE600), KX-NCP Series (e.g., KX-NCP500, KX-NCP1000), KX-HTS Series (e.g., KX-HTS32, KX-HTS824), KX-TDA series with VoIP cards such as IP Convergence Main Processing Cards ("IPCMPR"), IP Extension Cards (IP-EXT16, IP-EXT32), and/or SIP Trunk Cards (IP-GW4, IP-GW16) (e.g.,   KX-TDA30, KX-TDA50, KX-TDA100, KX-TDA100BX, KX-TDA100DBX, KX-TDA200, KX-TDA600 (with cards such as KX-TDA0470 IP-EXT16, KX-TDA0480 IP-GW4E, KX-TDA0490 IP-GW16, KX-TDE0101 IPCMPR, KX-TDA5450 4-Port SIP Trunk Card, Panasonic KX-NS5290 Trunk Card, KX-TDE0111 64-Channel VoIP DSP Card))), and products and services that incorporate the same or similar technology, that employ VoIP to perform various functions including, but not limited to, voice calling, voicemail, directory services, quality of service, and others using multiple components including, but not limited to, for example, hubs, switches, routers, session border controllers, servers and the like, and the software for operating such components ("Panasonic Products and Services").

22.     Upon information and belief, the telecommunication and information handling systems used by Panasonic employees provide at least one or more of the following functionalities: (i) the ability to make VoIP-based voice calls using its VoIP telephony devices; (ii) the ability to store voice mail messages; (iii) the ability to allow access to the voice mail messages using VoIP telephony devices; and (iv) the ability to provide directory services, which include, but are not

limited to, for example, providing directory information to a user or VoIP telephony device, including providing a list of telecommunications extensions through VoIP telephony devices.

23.     When this Complaint references "Accused Instrumentalities," it is referring to the telecommunications and information handling systems that Panasonic offers to sell, sells, and makes for its customers as well as the systems their employees use that are referenced in paragraphs 21-22 above and are incorporated herein by reference.

## COUNT I

## Infringement of U.S. Patent No. 8,391,298

24.     Estech repeats and re-alleges the allegations in paragraphs 1-23 as though fully set forth in their entirety.

25.     Estech owns all substantial rights, interest, and title in and to the '298 Patent, including the sole and exclusive right to prosecute this action and enforce the '298 Patent against infringers, and to collect damages for all relevant times. The United States Patent and Trademark Office duly issued the '298 Patent on March 5, 2013. A copy of the '298 Patent is attached as Exhibit A.

26.     The '298 Patent is titled "Phone Directory in a Voice Over IP Telephone System." The '298 Patent describes information processing systems that store a list of phone numbers, integrated with a VoIP telephony system, to provide those phone numbers to the user of a VoIP telephone.  The user can use that list to dial the telephone number of another user associated with the VoIP telephony system.

27.     The claims of the '298 Patent are not directed to an abstract idea.  For example, claim 13 of the '298 Patent recites a specific arrangement of devices and networking components. Together those devices and networking components enable a user of a first telecommunications device to observe a list of a plurality of telecommunications extensions.  The list of extensions is

stored in a server within a specific networking configuration, and the user can select to view a subset of the extensions.  Taken as a whole, the claimed inventions of the '298 Patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the functioning and operation of information processing systems.

28.    The written description of the '298 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

29.    Panasonic has infringed the '298 Patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering the Accused Instrumentalities for sale.

30.    The Accused Instrumentalities provide VoIP-based voice calling and data-networking services to VoIP telephony devices.

31.    The Accused Instrumentalities use first, second, and third LANs that are coupled with a WAN that communicates using an IP protocol.

32.    The Accused Instrumentalities include VoIP telephony devices connected to LANs, the VoIP telephony devices having telecommunications extensions associated therewith, the telecommunications extensions being coupled to at least the second and third LANs.

33.    At least one of the VoIP telephony devices include: (i) a means to display a list of telephone destinations, that are stored in an IP server and communicated to the VoIP telephony device, in response to selection of a first input on the VoIP telephony devices, (ii) a means to automatically call one of the telecommunications destinations in response to a user selecting one

of the telecommunications destinations from the list; (iii) a means to display at least two directories or types of directories; and (iv) a means to display the list of telephone destinations in response to a user selecting one of directories.

34.     The Accused Instrumentalities include servers in the second LAN that store telecommunications extensions accessed across the WAN, and communicate a list of the telecommunications destinations to at least one of the VoIP telephony devices.

35.     As described above, Panasonic has directly infringed (literally or under the doctrine of equivalents) at least Claim 13 of the '298 Patent.  Panasonic's infringement in this regard is ongoing.

36.     Estech has been damaged as a result of the infringing conduct by Panasonic alleged above.  Thus, Panasonic is liable to Estech in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

37.     Estech or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '298 Patent.

38.     Panasonic has also indirectly infringed the '298 Patent by inducing others to directly infringe the '298 Patent.  Panasonic has knowledge of the '298 Patent at least by the time of the service of this complaint.  Panasonic has induced end-users, including Panasonic's customers, partners, personnel, clients, and contractors, to directly infringe (literally or under the doctrine of equivalents) the '298 Patent by making and using the Accused Instrumentalities. Panasonic took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one

or more claims of the '298 Patent, including, for example, Claim 13 of the '298 Patent.  Such steps by Panasonic included, among other things, advising or directing customers, partners, personnel, contractors or end-users to make or use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner.  Panasonic is performing these steps, which constitute induced infringement with the knowledge of the '298 Patent and with the knowledge that the induced acts constitute infringement.  Panasonic is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '298 Patent.  Panasonic's inducement is ongoing.

39.    Panasonic has also indirectly infringed by contributing to the infringement of the '298 Patent.  Panasonic has contributed to the direct infringement of the '298 Patent by its customers, partners, personnel, contractors, clients, and suppliers.  The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '298 Patent, including, for example, Claim 13 of the '298 Patent.  The special features include, for example, the devices and networking components recited in Claim 13, including the interrelation between those devices and networking components, which allow the claimed server to provide a list of extensions and for the user to select to view a subset of the extensions.  The special features constitute a material part of the invention of one or more of the claims of the '298 Patent and are not staple articles of commerce suitable for substantial non-infringing use.  Panasonic's contributory infringement is ongoing.

40.    Furthermore, on information and belief, Panasonic has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Estech's patent rights.

41.     Panasonic's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Panasonic. Panasonic has knowledge of the '298 Patent at least by the time of the service of this complaint.

42.     Panasonic's direct and indirect infringement of the '298 Patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Estech's rights under the patent.

43.     Estech has been damaged as a result of the infringing conduct by Panasonic alleged above. Thus, Panasonic is liable to Estech in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

44.     Estech has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Estech has and will continue to suffer this harm by virtue of Panasonic's infringement of the '298 Patent. Panasonic's actions have interfered with and will interfere with Estech's ability to license technology. The balance of hardships favors Estech's ability to commercialize its own ideas and technology. The public interest in allowing Estech to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT II

### Infringement of U.S. Patent No. 7,068,684

45.     Estech repeats and re-alleges the allegations in paragraphs 1-45\4 as though fully set forth in their entirety.

46.     Estech owns all substantial rights, interest, and title in and to the '684 Patent, including the sole and exclusive right to prosecute this action and enforce the '684 Patent against infringers, and to collect damages for all relevant times. The United States Patent and Trademark

Office duly issued the '684 Patent on June 27, 2006. A copy of the '684 Patent is attached as Exhibit B.

47.     The '684 Patent is titled "Quality of Service in a Voice Over IP Telephone System." The '684 Patent describes information handling systems used to transmit voice using VoIP technology. The information handling systems throttle the amount of data being transferred from a workstation connected to the VoIP telephone.

48.     The method claims of the '684 Patent are not directed to an abstract idea. For example, claim 42 of the '684 Patent recites specific steps performed by a specific arrangement of devices and networking components and operations performed by those components. Together, those devices and networking components provide quality of service to audio information by throttling the amount of data being transferred through a VoIP Desk Phone with a PC port. Taken as a whole, the claimed inventions of the '684 Patent are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of information processing systems.

49.     The written description of the '684 Patent describes in technical detail each of the limitations of the method claims, allowing a skilled artisan to understand the scope of the method claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

50.     Panasonic has infringed the method claims of the '684 Patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering the Accused Instrumentalities for sale.

51.     The Accused Instrumentalities provide VoIP-based voice calling and data-networking services to Panasonic-branded VoIP Desk Phones with a PC port.

52.     The Accused Instrumentalities include VoIP servers such that audio information for VoIP-based voice calls is communicated between at least Panasonic-branded VoIP Desk Phones with a PC port and VoIP servers.

53.     The Accused Instrumentalities include workstations (including, but not limited to, for example, desktop computers, workstations, laptops, embedded devices, point-of-sale devices, and mobile devices) that send and receive data from data servers (including, but not limited to, for example, websites) that transfer data through the Panasonic-branded VoIP Desk Phones with a PC port.

54.     The Accused Instrumentalities sufficiently throttle data sent from workstations to the Panasonic-branded VoIP Desk Phones with a PC port to increase a rate of transfer of audio information for VoIP-based voice calls, where the data throttling comprises monitoring an amount of the audio information being received by the Panasonic-branded VoIP Desk Phones with a PC port from a VoIP server, where the Panasonic-branded VoIP Desk Phones with a PC port send a congestion message to the VoIP server when the amount of the audio information falls below the predetermined level, where the VoIP server sends a throttling signal that includes a mode level to the Panasonic-branded VoIP Desk Phones with a PC port in response to a receipt of the congestion message, where the mode level is set to a most aggressive mode, and where the Accused Instrumentalities throttle the data sent from workstations in response to the receipt of the throttling signal.  The throttling by the Accused Instrumentalities further comprises adjusting a level of throttling of the data sent from the workstations in response to the mode level, such that the

Accused Instrumentalities throttle the data sent from the workstation at a highest level in response to the mode level being set in the most aggressive mode.

55.    As described above, Panasonic has directly infringed (literally or under the doctrine of equivalents) one or more method claims, including at least Claim 42 of the '684 Patent. Estech does not allege infringement of any non-method claims of the '684 patent.

56.    Estech has been damaged as a result of the infringing conduct by Panasonic alleged above.  Thus, Panasonic is liable to Estech in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

57.    Estech or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '684 Patent.

**COUNT III**

**Infringement of U.S. Patent No. 7,123,699**

58.    Estech repeats and re-alleges the allegations in paragraphs 1-57 as though fully set forth in their entirety.

59.    Estech owns all substantial rights, interest, and title in and to the '699 Patent, including the sole and exclusive right to prosecute this action and enforce the '699 Patent against infringers, and to collect damages for all relevant times.  The United States Patent and Trademark Office duly issued the '699 Patent on October 17, 2006.  A copy of the '699 Patent is attached as Exhibit C.

60.    The '699 Patent is titled "Voice Mail in a Voice Over IP Telephone System."  The '699 Patent describes an information handling system for storing a voice mail message in a voice mail box in a voice mail system within a first local area network (LAN).  A user can access and

listen to the voice mail using a VoIP telecommunications device within a second LAN by connecting to the first LAN via a wide-area network (WAN), such as the Internet.

61.    The method claims of the '699 Patent are not directed to an abstract idea.  For example, claim 1 of the '699 Patent recites specific steps performed by a specific arrangement of devices in a networking environment.  Together those devices enable a user within a second LAN to access and listen to voice mail messages stored within a first LAN.  Taken as a whole, the claimed inventions of the '699 Patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the functioning and operation of information processing systems.

62.    The written description of the '699 Patent describes in technical detail each of the limitations of the method claims, allowing a skilled artisan to understand the scope of the method claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

63.    Panasonic has infringed the method claims of the '699 Patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering the Accused Instrumentalities for sale.

64.    The Accused Instrumentalities operate under a routable protocol including, but not limited to, for example, TCP/IP or UDP/IP.

65.    The Accused Instrumentalities include VoIP servers, such as the Panasonic Voicemail systems, that store a voice mail message in a voice mail box in a voice mail system within a first LAN.

66.     The Accused Instrumentalities include VoIP telephony devices coupled to the second LAN that provide a sensory indication when the voice message is stored in the voice mail box within the first LAN.  The VoIP telephony devices allow a user to access the voice mail system within the first LAN to listen to the voice message stored in the voice mail box.  The VoIP telephony devices allow a user to access the voice mail message stored in the voice mail box provided by the VoIP Servers by using communication protocols, including, but not limited to, for example, TCP/IP, UDP/IP, Session Initiation Protocol (SIP), Session Description Protocol (SDP), Real-time Transport Protocol (RTP), and Real-time Transport Control Protocol (RTCP) protocols to:  (i) establish a channel between the first and second LANs over the WAN; (ii) couple an audio path over the channel between the telecommunications device and the voice mail box; and (iii) stream voice data containing the voice message from the voice mail box to the telecommunications device over the audio path.

67.     The VoIP telephony devices and VoIP servers can establish a channel between the first and second LANs over the WAN, wherein the establishing includes:  (i) in response to an input at VoIP telephony devices, sending a user mail box connection message from the second LAN to the first LAN requesting a channel, wherein the user mail box connection message includes an extension associated with VoIP telephony devices and an identification of the voice mail box; (ii) assigning the channel by VoIP servers in the first LAN; and (iii) sending a connection established message from VoIP servers in the first LAN to the second LAN.

68.     As described above, Panasonic has directly infringed (literally or under the doctrine of equivalents) one or more method claims, including at least Claim 1 of the '699 Patent.  Estech does not allege infringement of any non-method claims of the '699 patent.

69.     Estech has been damaged as a result of the infringing conduct by Panasonic alleged above.  Thus, Panasonic is liable to Estech in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

70.     Estech or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '699 Patent.

### JURY DEMAND

71.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Estech requests a trial by jury on all issues triable by a jury.

### PRAYER FOR RELIEF

72.     Estech requests that the Court find in its favor and against Panasonic, and that the Court grant Estech the following relief:

a.     Judgment that one or more claims of the Estech Asserted Patents have been infringed, either literally or under the doctrine of equivalents, by Panasonic or all others acting in concert therewith;

b.     A permanent injunction enjoining Panasonic and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '298 Patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the'298 Patent by such entities;

c.     Judgment that Panasonic accounts for and pays to Estech all damages to and costs incurred by Estech because of Panasonic's infringing activities and other conduct complained of herein;

d.    Judgment that Panasonic's infringements be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.    Pre-judgment and post-judgment interest on the damages caused by Panasonic's infringing activities and other conduct complained of herein;

f.    That this Court declare this an exceptional case and award Estech its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated:  March 5, 2025                    Respectfully submitted,


                                         By: */s/ Fred I. Williams*
                                         Fred I. Williams (State Bar No. 00794855)
                                         fwilliams@wsltrial.com
                                         Lea Brigtsen (State Bar No. 24054504)
                                         lbrigtsen@wsltrial.com
                                         Stephen R. Dartt (State Bar No. 24042370)
                                         sdartt@wsltrial.com
                                         WILLIAMS SIMONS & LANDIS PC
                                         The Littlefield Building
                                         601 Congress Avenue, Suite 600
                                         Austin, TX 78701
                                         Tel: 512-543-1354

                                         John Wittenzellner
                                         Pennsylvania State Bar No. 308996
                                         WILLIAMS SIMONS & LANDIS PC
                                         1735 Market Street, Suite 125, #453
                                         Philadelphia, PA 19103
                                         Tel: 512-543-1373
                                         johnw@wsltrial.com

                                         *Attorneys for Plaintiff Estech Systems IP, LLC*